him should be estopped to deny that the holder was the payee. While the case of Chemical Nat. Bank v. Kellogg, 183 N. Y. 92, 75 N. E. 1103, 2 L. R. A. (N. S.) 299, 111 Am. St. Rep. 717, is not in its facts like this case, it seems to me that the principle declared and the reasons for it are applicable.

Moreover, independently of the foregoing, I think the plaintiff may recover the loss sustained by him as the direct result of the defendant's negligence. The complaint alleges all of the facts and that the defendant was negligent. That the defendant was culpably negligent cannot be doubted. The person to whom the check was delivered succeeded in doing what the defendant knew he would try to do with the means with which it supplied him. The subsequent cashing of the check was the natural, immediate, and proximate result of the delivery of it to the person claiming to be the payee. I do not think that banks can thus put the burden and responsibility of identifying their depositors upon strangers.

I do not say that the plaintiff can recover the expenses incurred in the defense of the suit brought by the subsequent indorsee. The record before us discloses nothing tending to justify that defense, and, of course, the plaintiff could not increase the damages by doing a futile thing.

The judgment is reversed.

Judgment reversed and new trial granted, costs to abide the event. All concur.

---

## ERIE COUNTY v. DIEHL et al.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1909.)

1. DEPOSITS IN COURT (§ 4*)—INVESTMENT BY COUNTY TREASURER.

A county treasurer has no authority to invest in bonds and mortgages moneys deposited with him by order of court to the credit of infants and lunatics, except upon order of a court of competent jurisdiction authorizing him so to do.

[Ed. Note.—For other cases, see Deposits in Court, Cent. Dig. § 5; Dec. Dig. § 4.*]

2. COUNTIES (§ 98*)—COUNTY TREASURER—INVESTMENT OF TRUST FUNDS—LIABILITY ON BOND.

For any loss resulting to a county or to infants or lunatics, whose moneys are deposited with the county treasurer, because of the treasurer's act in investing such moneys in inadequate securities without first obtaining an order of court to do so, the treasurer and his sureties are liable.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 141; Dec. Dig. § 98.*]

3. COUNTIES (§ 98*)—COUNTY TREASURER—INVESTMENT OF TRUST FUNDS.

The treasurer and his sureties were not liable where the treasurer's successor paid the infants in full with funds realized from the investment of other moneys deposited with him by order of court in the same securities.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 141; Dec. Dig. § 98.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. COUNTIES (§ 98*)—COUNTY TREASURER—INVESTMENT OF TRUST FUNDS—LIA-
   BILITY ON BOND—DISCHARGE—ACTS OF SUCCESSOR.
       Where a county treasurer invested moneys deposited with him for
   infants or lunatics in a bond and mortgage without first obtaining an
   order of court to do so, the treasurer and his sureties were not absolved
   from liability for the delinquency of the treasurer by the fact that his
   successor without authority released a large part of the mortgaged prem-
   ises from the lien thereof.
       [Ed. Note.—For other cases, see Counties, Cent. Dig. § 141; Dec. Dig.
   § 98.*]

5. COUNTIES (§ 90*)—OFFICERS—TREASURERS—ILLEGAL ACTS—PENALTY.
       A county treasurer is not liable to penalty of $1,250 for making illegal
   investments of moneys deposited with him for infants and lunatics under
   order of court, as the provision of the Code imposing such penalty relates
   to the refusal of the treasurer to turn over his books, papers, and other
   emoluments of his office.
       [Ed. Note.—For other cases, see Counties, Cent. Dig. § 135; Dec. Dig.
   § 90.*]

       Robson, J., dissenting.

    Appeal from Equity Term, Erie County.

    Action by the County of Erie against Jacob W. Diehl and others.
From a judgment for plaintiff, defendants appeal. Modified.

    The action was commenced on the 8th day of July, 1907, by the county of
Erie, on behalf of itself and other persons in interest, against the defendants,
who are the bondsmen and the personal representatives of the deceased bonds-
men of John B. Sackett, as county treasurer of Erie county, who was such
treasurer from the 1st day of January, 1891, to the 31st day of December,
1893, to recover upon such bond or undertaking the amount of damages, pen-
alty, and costs which, it is claimed, said bondsmen became obligated to pay be-
cause of the failure of said Sackett to keep and perform the conditions there-
of and to faithfully discharge the duties of said office and as required by law.

    The items which go to make up the aggregate of the judgment are specified
therein, and are as follows:

    "That the plaintiff recover of the defendants and each of the defendants:
(1) For the benefit of Ella M. Fisher, $2,455.32, and interest on $1,600 thereof
from October 30, 1907, to this date; in all, $2,460.12.

    "(2) For the benefit of Charles F. Rupp, $1,569.10, and interest on $1,000
thereof from October 30, 1907, in all $1,572.10.

    "(3) For the benefit of Edward Metzel, Charlotte Metzel, Arthur Metzel,
and Emily Metzel, and John Kramer, Joseph Kramer, and Charles W. Kramer,
in amounts corresponding to their respective moneys invested in said Myra C.
Holcomb mortgage, $1,599.22, and interest on $1,274.50 thereof from October
30, 1907; in all, $1,603.04.

    "(4) For the benefit of the plaintiff for foreclosure costs and expenses,
$739.27 and interest on $351.92 thereof from June 10, 1901, and interest on
$212.75 thereof from June 10, 1901, and interest on $174.60 thereof from June
14, 1898; in all, $1,056.43.

    "(5) For the benefit of the county of Erie, being the forfeiture provided by
statute, $1,250.

    "(6) That the plaintiff also recover the costs of this action as taxed, amount-
ing to $139.43, making a total recovery of $8,081.12; and that the plaintiff
have execution therefor."

    It is urged by the appellants that neither of such items are chargeable to
them as sureties upon the bond in question, and therefore they ask that the
entire judgment be reversed.

    Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Loran L. Lewis, for appellant Diehl and others.
Love & Keating, for appellant Fallon.
Robert F. Schelling, for appellant Handel.
George H. Kennedy (Phillip A. Laing, of counsel), for respondent

McLENNAN, P. J. On the 1st day of January, 1891, John B Sackett became treasurer of the county of Erie, and continued as such until December 31, 1893, when his term of office expired and he was succeeded by one George Baltz.

Before entering upon the discharge of his duties as county treasurer, and on or about the 12th day of December, 1890, the said Sackett, as principal, and the defendant bondsmen and the deceased bondsmen, whose personal representatives are made parties defendant, as sureties, executed a bond, in the usual form, to the board of supervisors of Erie county, in the penal sum of $250,000, and conditioned for the faithful discharge by Sackett of his duties as county treasurer and in all respects as required by law. It is practically conceded that the plaintiff, the county of Erie, has succeeded to all the rights which the board of supervisors of Erie county, to whom the bond was given, had in the premises, and that it is entitled to enforce as against the sureties any legal obligation incurred by them because of the omission of Sackett to keep and perform the conditions of such bond so executed by them. The basis of plaintiff's claim is that Sackett, as county treasurer, invested certain moneys belonging to infants and lunatics, deposited with him by order of the court to the credit of such infants and lunatics, in bonds and mortgages, without obtaining any order of the court permitting or directing him so to do, and that such acts on his part were illegal and in violation of law; also, that the bonds and mortgages in which he invested such moneys were inadequate security for the same, and that the investments were made negligently and in disregard of the duty which he owed to such wards, and for whose moneys he became trustee.

We think it should be held that Sackett, as county treasurer, had no authority to invest the moneys, so deposited with him, in bonds and mortgages, except upon order of a court of competent jurisdiction authorizing him so to do, and that for any loss resulting to the county or to the infants and lunatics, whose moneys were deposited with him, and because of such illegal acts the sureties are liable. The sections of the Code, to which attention is called in respondent's brief, when read in connection with the provisions of the county law, make it clear that it was the intention of the Legislature to safeguard the moneys belonging to wards of the court, and deposited with the county treasurer for safe-keeping, by requiring that before such moneys shall be invested in bonds and mortgages such investment must receive the sanction of the court. But these conclusions which are in accordance with the respondent's contention do not, under the facts of this case as found by the court, necessarily impose liability upon the defendants, although all the bonds and mortgages which are the subject of this investigation were taken without obtaining an order of the court authorizing such investments.

As to the first item specified in the judgment. In July, 1893, a proceeding was instituted in the Supreme Court for the sale of real estate

belonging to Grace and Margaret Smith, infants, the same being thereafter sold for $1,950. The sale was duly confirmed, and that amount, by order of the court, was duly deposited with Sackett, as county treasurer. A few days later, without obtaining an order of the court permitting him so to do, Sackett assumed to loan $1,600 of said moneys, and took as security therefor two bonds, secured by mortgages upon real property in Erie county, each for $800, for the benefit of said infants respectively. Upon the expiration of his term of office Sackett turned over said two bonds and mortgages to his successor. Such successor had moneys in his hands, which had been deposited with him as county treasurer by order of the court, belonging to one Ella M. Fisher, an infant, and which were the proceeds of the sale of her real estate. Sackett's successor, Baltz, invested the moneys of the infant Fisher, and which had been deposited with him, in the two Smith mortgages taken by Sackett, and the Smith infants were paid in full, both principal and interest. We think it cannot be held that the bondsmen of Sackett are liable because his successor invested the moneys of the infant Fisher in the illegal or unauthorized mortgages taken on behalf and for the benefit of the Smith infants, when they, such Smith infants, as found by the trial court, have been paid in full the moneys awarded to them as the full value of the real estate belonging to them which was sold.

The third item specified in the judgment, for which it is sought to hold the defendant sureties, is of like effect, and it appears that the infants, or persons of which Sackett, as county treasurer, was trustee, have been paid in full, and that the only claim against him or his bondsmen is that the securities turned over to his successor in office are not collectible, there being no pretense that the cestuis que trustent, which he represented, have not been fully paid every cent which was their due, both principal and interest.

The second item of the specifications presents quite a different phase. In that case Sackett, as treasurer, invested certain moneys deposited with him, belonging to Charles F. Rupp, an infant, in a bond and mortgage, without authority of law, as we have held. Such bond and mortgage was turned over to Sackett's successor in office, and such successor assumed to release a large part of the mortgaged premises from the lien thereof. While we think such release was unauthorized and in violation of the terms of the mortgage, we think it ought not to be held that such improper conduct on the part of the successor of Sackett should be regarded as absolving Sackett or his sureties from the delinquency of Sackett in accepting the bond and mortgage which is one of the items for which recovery is sought in this litigation. The citation of authorities would seem to be unnecessary to the effect that, where a cestui que trust has been paid in full, the bondsmen of the trustee are discharged from further obligation in respect to the administration of the funds of such estate. In the specifications of the judgment numbered "1" and "3," the cestuis que trustent of Sackett, as county treasurer, were fully paid the amounts coming to them respectively, and we think it ought not to be held that, because of the illegal investment of other funds in securities possibly illegal taken by his successor, the bondsmen of Sackett should be held liable for the unfortunate investment of his successor or successors in office.

The proposition is this: A county treasurer makes an investment and takes securities therefor which are illegal, as to him, under the law. His successor, or his successor's successor, assumes to invest the funds which came into his possession in such illegal securities. It seems to me wholly illogical that such first transgressor, whose cestuis que trustent have been fully paid, should be held liable because his successor made an illegal investment. I think it should be held that the defendant bondsmen, or the representatives of the deceased bondsmen, are not liable to the infant, Ella M. Fisher, when, as found by the trial court, the Smith infants, for whom Sackett was trustee, have been paid in full, notwithstanding any violation of his duty which he had committed in taking the bonds and mortgages, and also that the same is true and applies with equal force and effect in respect to the third item specified in the judgment.

It seems to me that as to the second item specified in the judgment it should be held that the defendant sureties are liable to Charles F. Rupp for the amount of loss sustained by him. The cost of the foreclosure of the mortgages in the first and third items of recovery specified in the judgment should not be recovered. The amount of the expenses and costs in the foreclosure of the Rupp mortgage should be allowed.

As to the recovery of the penalty, we think it should be disallowed. We think it cannot be possible that the Legislature intended such penalty of $1,250 should be recoverable as the result of an issue which should determine the rights and liabilities of parties such as are here involved, but rather that such penalty is to be imposed where a county treasurer refuses to turn over his books, papers, and other emoluments of his office. It does not seem to me that this is a case in which it is proper to impose the penalty prescribed by statute.

Our conclusion is that the defendants are liable for the second item specified in the judgment, to wit, the sum of $1,569.10, and interest on $1,000 thereof from October 30, 1907, in all $1,572.10, besides the costs of foreclosure of said Rupp mortgage, and that the judgment should be so modified as to provide for a recovery in favor of the plaintiff for those amounts only, and, as so modified, affirmed, without costs of this appeal to either party.

Judgment modified so as to provide for the recovery by the plaintiff of the sum of $1,569.10 only, with interest on $1,000 thereof from October 30, 1907, in all $1,572.10, besides the costs of foreclosure of the Rupp mortgage, and, as so modified, affirmed, without costs of this appeal to either party.

WILLIAMS, J., concurs. ROBSON, J., dissents, and votes for reversal absolutely.

SPRING, J. (concurring). It does not seem to me to be necessary to determine in this case whether the investments made by the county treasurer were unauthorized because of the failure to obtain an order of the court directing such investments to be made.

As to the investment in the bond and mortgage for the Smith infants, made by County Treasurer Sackett, the proof shows that these infants were paid the full amount invested by the treasurer, so that their inter-

est in the investment terminated, and this conclusion does not depend in any way upon the legality or illegality of the original investment.

The investment for the benefit of the infant Charles Rupp, also made without an order of the court, was in a mortgage given by Herman Gruner, accompanied by the bond of the mortgagor. This mortgage was for about $1,900, and an assignment of that mortgage was taken by the county treasurer, $1,000 of it for the benefit of the infant Rupp, and $900 for other infants. The mortgage at the time it came into the possession of County Treasurer Sackett covered five acres of land, and contained a somewhat ambiguous clause in regard to releases which might be made, and Gruner, the mortgagor, was insolvent, and judgments were entered against him at the time of the assignment of the bond and mortgage to the treasurer. The land was unimproved, and was on the corner of Delevan and Hagen streets, the long frontage being on the latter street, which was merely on paper, and there were no surface indications of the existence of any street or highway. The court has found that these lands—

"had no certain or fixed value, and lands and premises in that locality were at that time being bought and sold for speculative purposes only. That on a conservative valuation said lands and premises were worth not to exceed $650 per acre, and were not such security as is commonly approved and taken by savings banks, trust companies, and persons and institutions having moneys to loan upon real estate for investment. That the said lands and premises were not proper security for the investment of the funds of infants or lunatics, or other trust funds."

I think the proof sustains this finding of the court. This was not the kind of real estate which should be the basis of investment of infants' funds. It was of fluctuating value, without any buildings, and not usable for any profitable purpose. The security which is suitable for investments of this kind is upon real estate of stable value, cultivated, and upon which are buildings, so that there is a fair indication that there will be no material depreciation in its value. This investment was made by Sackett when this property and adjacent property had an inflated value which affected for several years vacant property in and near the city of Buffalo. The old chancery rule (180), the rules of the court, and the Code provisions have always required that investments of infants' funds in mortgages covering lands made by the county treasurer should be upon lands which are unincumbered and worth at least twice the amount of the money loaned, exclusive of the buildings. There was no compliance by the county treasurer with this salutary rule.

For these reasons, I concur in the result reached by the Presiding Justice.

KRUSE, J., concurs.